NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 24, 2009[*]
Decided June 25, 2009

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-4293

| | |
|---|---|
| SHEILA RENEE EASLEY, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 07-C-0362 |
| | |
| YMCA OF METROPOLITAN | Patricia J. Gorence, |
| MILWAUKEE, INC., | *Magistrate Judge.* |
| *Defendant-Appellee.* | |

**O R D E R**

Sheila Easley was on medical leave from her job at the YMCA of Metropolitan Milwaukee when she was notified that her position was being eliminated as part of a restructuring plan. She sued the YMCA claiming, as relevant here, that she was fired and then passed over for a newly created job in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654. She also claimed that, before she took medical leave, her supervisor

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

had created a "hostile work environment" because of her gender, in violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and because she had alerted YMCA officials that his friend, another management employee, was embezzling organization funds. A magistrate judge, presiding by consent of the parties, granted summary judgment for the YMCA. Easley appeals, and we affirm the judgment.

Easley was hired as a secretary and accounting assistant in 1998 and, after several promotions, became the Administrative Director of the Parklawn branch in 2002. In September 2005 her supervisor, the Branch Executive at Parklawn, resigned after an audit triggered by complaints from Easley. A YMCA vice president, Harvey "Jock" Johnson, took over as Branch Executive and began directly supervising Easley.

Two months later Easley complained to Laura Jazwiecki, a Human Resources employee, that Johnson was harassing her because she had informed on her old boss. Easley told Jazwiecki that Johnson's formerly professional attitude had shifted to yelling and criticism. And, she added, Johnson had warned her not to go over his head and report anything because he was friends with everyone in senior management. Easley submitted a formal grievance recounting that Johnson had been verbally abusive, but she did not link his behavior to her gender, nor did she allege that he ever said anything about gender. Easley's complaint prompted the Vice President for Human Resources to counsel her and Johnson about improving their working relationship, including by clarifying job responsibilities and meeting with each other weekly. In the months that followed, Easley twice more told Jazwiecki that Johnson was treating her poorly, but she did not formalize her complaints. Nor did she say anything about Johnson making sexist remarks.

The conflict between Easley and Johnson came to a head in April 2006. After Easley questioned his directive that she, rather than the grant administrator, prepare monthly cost reports for a funding grant, Easley immediately complained to Human Resources. Johnson, in turn, issued Easley a disciplinary notice the next day because she had questioned his decision and acted in a manner that, in his view, had been unprofessional and insubordinate. The day she received the notice, she left work early for a doctor's appointment and returned with a note from her doctor saying she could not work for two weeks. The doctor did not give a reason.

When Easley did not return to work, Johnson conveyed to Human Resources his "opinion" that she was feigning illness because she was upset about being reprimanded. Human Resources sent Easley a form to request FMLA leave and reminded her that the leave status had not yet been approved. Easley returned the form with conflicting certifications from two different healthcare providers, one saying that she would be out two

weeks or possibly longer, and the other estimating that her absence would last three to six months. The Vice President for Human Resources notified Easley that the YMCA wanted another certification. The YMCA continued to pay Easley while waiting for this further certification, which diagnosed Easley with major depression and recommended leave until July 28. The YMCA approved Easley's leave and continued to pay her, but Easley was never given formal notice that her FMLA leave had been authorized.

While on leave, Easley contacted a lawyer. Counsel wrote the YMCA on June 13, 2006, complaining about what Easley perceived as workplace hostility. In his letter counsel said nothing about sexual harassment and instead represented that Easley "traces the beginning of the hostility to her 'whistle blowing' on her former supervisor." According to counsel, Easley had been praised for her good work and efficiency before she disclosed the misconduct of the former Branch Executive, but afterward her work environment had become "hostile." The attorney requested a meeting to resolve the situation before resorting to "formal outside intervention."

The YMCA apparently did not reply to counsel's letter. But on July 25, a few days before Easley's anticipated return to work, the YMCA sent a letter announcing that her job was being eliminated on August 28 due to staff restructuring at Parklawn and a second branch, Holton. The letter informed Easley that she need not return to work but still would be paid through the end of August. She also was encouraged to apply for open positions with the organization. Easley applied for the newly created position of Branch Administrator, which consolidated into a single job the duties performed by Easley and her counterpart at the Holton branch. Easley was not interviewed for this position, which was filled in December by an outside candidate. Meanwhile, Easley had contacted a second lawyer, who in November sent the YMCA a letter proposing a settlement in lieu of filing a complaint. This time counsel suggested that the YMCA had violated the FMLA and said she was investigating possible gender discrimination.

Easley was not represented by counsel, however, when she filed a charge of discrimination with the Equal Employment Opportunity Commission in January 2007. Easley alleged that Johnson had "made biased comments about women," and said she alerted Human Resources that he was "harassing" her. Easley told the EEOC that Johnson's purported harassment led to her taking medical leave, and she claimed she was fired and then turned down for the newly created position in retaliation for engaging in unspecified "protected activity." The EEOC closed its file in March 2007, and Easley filed this pro se lawsuit in April.

After discovery the YMCA moved for summary judgment. As to Easley's claim of sexual harassment, the YMCA acknowledged her accusation in answers to interrogatories that Johnson had made several sexist statements during the months before she left on medical leave. Johnson had reportedly told Easley that typing and preparing paperwork were jobs for women, and that Easley should tell a female coworker who saw a posting for a Senior Program Director not to bother applying because the job was reserved for a man. Another time, according to Easley, as she was leaving to buy food for a meeting, Johnson told her to buy food for "the men" because they were bachelors and needed to eat. The YMCA noted, however, that Easley had never reported any sex-based comments to Human Resources, and instead had attributed Johnson's behavior to anger that she disclosed his predecessor's misconduct. That kind of retaliation, the YMCA maintained, was not actionable under existing laws protecting whistleblowers. Moreover, the defendant continued, Johnson's few, isolated comments were not severe or pervasive enough for a reasonable person to conclude that the working environment at the Parklawn branch had been hostile to women.

Additionally, the YMCA asserted that Easley could not make out a prima facie case of retaliation for exercising her rights under the FMLA. The defendant argued that Easley's only direct evidence—the timing of the letter announcing the restructuring—was not sufficient to raise an inference of retaliation. The YMCA submitted evidence that Easley's job had been eliminated as part of a cost-cutting restructuring plan that was initiated in March 2006, the month before Easley announced she would be taking medical leave, and had nothing to do with her being on medical leave. The restructuring plan combined the management of the Parklawn and Holton branches: the job of Administrative Director at each branch was merged into one new position with a different title and broader duties, and the two Branch Executive positions were also combined into one. As a result, Easley and Mary Wise, the Administrative Director at Holton, were terminated; Johnson took early retirement; and the Branch Executive at Holton was retained and assumed Johnson's duties at Parklawn. In addition, the YMCA submitted evidence that the position of Administrative Director also was eliminated at two other branches, and that the other employees who lost their jobs were not on FMLA leave when the restructuring occurred.

Finally, the YMCA denied that it rejected Easley for the new position of Branch Administrator because she had taken FMLA leave. The new position, unlike the job Easley held, required a bachelor's degree, which Easley did not have. The Vice President for Human Resources testified by affidavit that Easley was not selected for an interview because she did not meet the educational requirements, and exceptions to the posted educational requirements were not made. In fact, the position was advertised twice because the first time none of the 58 applicants, including three other internal candidates besides

Easley, was deemed suitable. Additionally, the witness noted that Easley did not even apply for any of the more than 75 other job openings at the YMCA.

Easley opposed the YMCA's motion and submitted her own statement of proposed facts, most of them consistent with the defendant's account of events. Pertinent here, Easley submitted an unauthenticated copy of a letter purportedly written by Mary Wise, the Administrative Director at the Holton branch who also lost her job in the restructuring. The unverified letter, written at Easley's behest months after she filed suit, recounts that Wise, when she was informed by the Branch Executive at Holton that her job was being eliminated, also was told that "this is the route we had to go" because of "all that stuff going on with Sheila at Parklawn." In addition, Easley represented that the Vice President for Human Resources had used a "threatening tone" when she telephoned and left her message requesting another FMLA certification. In this message the vice president warned Easley not to "play this game with me."

In granting summary judgment for the YMCA, the magistrate judge concluded that Easley had no actionable claim if Johnson harassed her because of her whistleblowing, and that her evidence was insufficient to raise a reasonable inference that his behavior was on account of her gender. Additionally, the magistrate judge rejected Easley's apparent theory that the YMCA had violated the FMLA by not formally communicating that her medical leave had been approved. Finally, the magistrate judge noted that the only direct evidence of retaliation was the timing of Easley's termination, but noted that suspicious timing alone is insufficient to show retaliation. And further, the magistrate judge concluded, Easley lacked sufficient evidence for a jury to reasonably conclude that the YMCA's stated reason for eliminating her position—the restructuring—was pretextual.

On appeal Easley challenges the district court's conclusion that she lacked sufficient evidence to warrant a trial on her claims that the YMCA maintained a hostile work environment, and that the defendant violated the FMLA by eliminating her job and not rehiring her. She also presses her contention that the YMCA violated the FMLA simply by neglecting to formally notify her that her medical leave had been approved. We review a grant of summary judgment de novo, construing all facts in favor of the nonmoving party. *See Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008).

Title VII prohibits gender-based discrimination that creates a hostile work environment, *see* 42 U.S.C. § 2000e-2(a)(1); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64-67 (1986), but does not mandate "general civility" in the office, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Easley contends that the working conditions at the Parklawn branch triggered her depression, but to prevail at trial she would have to show

that a reasonable person could find that she suffered sex-based harassment so severe or pervasive that it made the work environment hostile. *See Henry v. Milwaukee County*, 539 F.3d 573, 586 (7th Cir. 2008).

The objective severity of workplace harassment turns on the frequency of discriminatory conduct, the threatening or humiliating nature of the conduct, and the extent it unreasonably interferes with work performance. *Silk v. City of Chi.*, 194 F.3d 788, 804 (7th Cir. 1999). In this case, Easley's own actions dispel any argument that a reasonable person would think she was subject to a hostile work environment. All along, until after she lost her job, Easley attributed Johnson's conduct to her whistleblowing activities, not to gender discrimination. She never complained to Human Resources about Johnson's sexist comments; instead, she asserted that Johnson began treating her badly after her actions prompted the resignation of his predecessor. Easley first mentioned gender discrimination in her submission to the EEOC four months after she was terminated, and even the lawyer who wrote to the YMCA on her behalf six months earlier had said nothing about Title VII or gender discrimination. Moreover, the few sexist comments that Easley attributes to Johnson over the eight months she worked under him do not amount to objectively serious or pervasive conduct. *See Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (collecting cases) (concluding that eight gender-related comments over five years did not constitute severe or pervasive harassment).

As for the FMLA, Easley first argues that the YMCA violated the statute by not giving her the required notice that her leave had been approved. *See* 29 C.F.R. § 825.300(b), (d). But her leave *was* approved, and Easley has not shown that the omission of a formal notification resulted in harm as is required to recover for a FMLA violation. *See* 29 C.F.R. § 825.300(e); *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87-96 (2002); *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 762 (7th Cir. 2008).

Next, Easley argues that her termination was somehow linked to her FMLA leave. She points to (1) the timing of the termination, (2) Johnson's comment that he thought she was staging her illness to cause problems, (3) the phone message from the Vice President for Human Resources, which Easley interpreted as threatening, and (4) the unauthenticated letter, purportedly from Mary Wise, linking the elimination of Wise's job with "all that stuff going on with Sheila."

An employer may not retaliate against an employee for taking leave under the FMLA, 29 U.S.C. § 2615(a); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004), and must restore an employee to the same or equivalent position upon return from FLMA leave, 29 U.S.C. § 2614(a)(1). But if an employee's position is eliminated for reasons unrelated to

the leave, she has no right to reinstatement, *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 977-78 (7th Cir. 2008), and an employer can rebut a prima facie case of retaliation by submitting evidence that the same action would have occurred even without a retaliatory motive, *Cole v. Illinois*, 562 F.3d 812, 815 (7th Cir. 2009); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 634-35 (7th Cir. 2009). The YMCA offered evidence that Easley's position was eliminated as part of a restructuring to reduce costs. The focus here, then, is whether Easley has submitted enough evidence to cast doubt on that reason.

Although the record shows conflict surrounding Easley's FMLA leave, none of her evidence undercuts the legitimacy of the restructuring plan, which the YMCA had started planning a month before she announced she was taking medical leave. Taken alone, the timing of her termination does not create an inference that it was because of her leave, *see Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008), and the other evidence adds little to the inference. Johnson's expression of opinion (which preceded Easley's submission of her FMLA paperwork) and the phone message from the Vice President for Human Resources (which concerned the conflicting certification forms) imply suspicion that Easley was about to abuse the FMLA-leave process but do not evince an intent to get rid of her. In fact, Johnson's retirement had been announced in June 2006, a month before Easley received word of the restructuring, so he was not even around when she was terminated and not rehired.

What might have had some probative value in showing a retaliatory intent is the letter from Wise saying that her boss connected the bad news about her job with "all that stuff going on" with Easley. This document, though, is irrelevant. The magistrate judge expressly declined to consider proposed facts that were not supported by admissible evidence, and the Wise letter is unsworn and thus inadmissible, *see* FED. R. CIV. P. 56(e)(1); *Collins v. Seeman*, 462 F.3d 757, 760 n.1 (7th Cir. 2006); *Woloszyn v. County of Lawrence*, 396 F.3d 314, 323 (3d Cir. 2005). Moreover, the document attributes the comment about Wise to the Branch Executive at Holton, and Easley submitted no evidence that he played any role in the restructuring process. And since a lot of "stuff" had been going on between Easley and Johnson—more than just the FMLA issue—Easley needs more evidence to connect that statement to her termination. The record, therefore, does not contain evidence that creates a genuine dispute about the legitimacy of the YMCA's restructuring plan.

Finally, Easley contends that the YMCA did not hire her for the new job of Branch Administrator because she took FMLA leave. But she presented no direct evidence of this, nor did she establish a prima facie case of discrimination under the indirect method of proof. *See Blise v. Antaramian*, 409 F.3d 861, 866-67 (7th Cir. 2005). An essential element of the prima facie case is that she was qualified for the position of Branch Administrator.

*See Rudin v. Lincoln Land Comm. Coll.*, 420 F.3d 712, 724 (7th Cir. 2005). But the position required a bachelor's degree, which Easley did not have, and the successful candidate did.

Accordingly, the grant of summary judgment to the YMCA is AFFIRMED.